**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | | |
|---|---|---|
| RICHARDS BUILDING SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:21-cv-281 |
| v. | ) | |
| | ) | |
| DREW HEGARTY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Richards Building Services, LLC ("Richards"), by its undersigned attorneys, and for its Complaint for Injunctive and Other Relief against Drew Hegarty ("Hegarty"), states as follows:

### NATURE OF THE ACTION

1.      Richards seeks a permanent injunction and monetary relief for Hegarty's wrongful conduct in violation of his employment agreement with Richards.  Specifically, Hegarty, a former employee of Richards, provides installation services for, among other things, roofing, siding, and windows, in direct competition with Richards and in the Raleigh, North Carolina marketplace as Richards, and is engaged in competitive activity in violation of the unequivocal contractual duties set forth in Hegarty's Employment, Non-Solicit and Non-Compete Agreement (the "Non-Competition Agreement").  By engaging in such competitive activities, Hegarty will inevitably disclose Richard's confidential, proprietary information, including customer lists, pricing information, and information concerning Richard's business operations.

2.      In particular, under the Non-Competition Agreement, Hegarty agreed not to, among other things (a) solicit, interfere or induce away from Richards any company or person which is or was a customer of Richards during the time that Hegarty was employed, (b) perform

services similar to those that Hegarty performed for Richards for any competing business within 30 miles of Richard's Raleigh location, or (c) solicit or induce any employee of Richards to leave their employment with Richards.

3. Ignoring his post-employment restrictive covenants, Hegarty has engaged in a scheme to solicit Richards' customers and divert them to his new company, and to directly compete with Richards in the marketplace. As a result of Hegarty's wrongful conduct and breach of his restrictive covenants, Richards has suffered and continues to suffer irreparable harm, including the threatened loss of business and customers, and other irreparable harm, as described herein. In fact, at the filing of this action, Hegarty has already solicited away one of Richards' long-standing customers and secured siding installation projects.

4. As a result of Hegarty's wrongful and competitive conduct and breach of his restrictive covenants in his Non-Competition Agreement, Richards has suffered irreparable harm, including the erosion of its goodwill and loss of business and customers. Unless Hegarty is forced to comply with the terms of his restrictive covenants, Richards will continue to suffer irreparable harm, including the erosion of its goodwill and continuing loss of business and customers. In addition, Richards seeks an award of damages against Hegarty for injuries it has suffered as a result of Hegarty's breach of his contractual obligations under the Non-Competition Agreement and Hegarty's tortious interference with Richards' business relationships with its customers.

## THE PARTIES

5. Richards Building Service, LLC, is a North Carolina limited liability company. Richards that provides, among other things, roofing, siding, and window installation services throughout North Carolina and parts of Virginia. Richards' members are comprised of the Richard J. Guzior Living Trust Number 3, dated November 26, 2019, of which Richard J. Guzior is the sole trustee and the Christine E. Guzior Living Trust Number 2, dated November 26, 2019, of

which Christine E. Guzior is the sole trustee. Richard J. Guzior is a citizen of the State of Illinois. Christine E. Guzior is also a citizen of the State of Illinois. Moreover, the beneficiaries of both the Richard J. Guzior Trust and the Christine E. Guzior Trust are also citizens of the State of Illinois. Based upon the citizenship of its members, Richards is a citizen of the State of Illinois.

6. Defendant, Hegarty, is a citizen of the State of North Carolina. Hegarty is a former employee of Richards, who previously held the position of Senior Install Sales Manager Richard's office in Raleigh, North Carolina. Hegarty was primarily responsible for securing contracts for Richards' roofing, siding and window installation business throughout North Carolina and Virginia. Hegarty was also responsible for increasing Richards' sales and profits from existing potential customers, and cultivating and developing new customers, including through customer visits and providing sales quotes. Hegarty's employment with Richards terminated on April 20, 2021. Subsequently, Hegarty started providing roofing, siding and window installation services in direct competition with Richards in the Raleigh area, which is the same work he performed during his time with Richards.

<u>**JURISDICTION AND VENUE**</u>

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiff and Defendant, and the amount-in-controversy exceeds $75,000, exclusive of interest and costs.

8. Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because many of the events giving rise to Richard's claims occurred in this District and Hegarty is subject to personal jurisdiction in this District and also transacts business in this District.

## FACTS COMMON TO ALL COUNTS

### A. Richards' Business

9.     Richards provides, among other things, siding, window and door installation services to contractors and commercial and residential property owners throughout North Carolina and Virginia.

10.     Richards employs highly skilled individuals in the construction industry, which allows it to offer its clients important information about the marketplace and provide the exceptional service which sets it apart from its competitors. Part of what sets Richards' apart from its competitors is the financial investment Richards makes in its relationships with its customers and its industry reputation.

### B. Hegarty's Non-Competition Agreement

11.     On December 13, 2019, Hegarty commenced his employment with Richards. Initially, Hegarty was employed as a Senior Install Sales Manager engaged in the sale of  siding, window and door installation services to commercial and residential owners and contractors.  In that role, Hegarty was engaged in sales related activities in which he has daily contact with customers, including contractors and owners, and was one of the main points of contact for Richard's customers.  Hegarty also worked with the installation crews in order to support the installation jobs performed by Richards.

12.     At the time he commenced his employment with Richards, Hegarty executed the Non-Competition Agreement.  Ronald M. Guzior executed the Non-Competition Agreement on behalf of Richards.  (*See* Non-Competition Agreement, attached as Exhibit A).  The Non-Competition Agreement was supported by consideration through, among other things, Hegarty's employment with Richards and a monetary payment to Hegarty in the amount of $2,000.  (Non-Competition Agreement, § 5.8).

13.     At the time he signed the Non-Competition Agreement, Hegarty acknowledged that Richards has a "significant network of locations, history of growth and success within the industry in its operations, personnel, processes, methods and customer base." (*Id.*, at Recitals, A). He acknowledged that as a Senior Install Sales Manager of Richards, he would be "exposed to and develop familiarity with, and expertise in, the operations and business of [Richards]," and would "have access to Confidential Information, as well as protected client and business relationships … which both parties mutually agree are entitled to protection during and after [Hegarty's] employment with [Richards]." (*Id.*, at Recitals, C-D). He also acknowledged that he was voluntarily entering into the Non-Competition Agreement "to protect the business of [Richards] from potentially irreparable harm that could result from unauthorized disclosure of Confidential Information, and to protect and enhance the goodwill and assets of [Richards] by, among other things, restricting [Hegarty's] ability to solicit [Richards] employers and customers or otherwise cause [Richards] harm through inappropriate competition." (*Id.*, at Recitals, G).

14.     The Non-Competition Agreement provided that during the course of Hegarty's employment with Richards, he would have access to confidential information, which would be necessary to enable him to satisfactorily perform the tasks required for his positions.  Furthermore, the Non-Competition Agreement stated that Hegarty would have substantial contact with clients of Richards. (*Id.*).

15.     The Non-Competition Agreement defines "Confidential Information" as being all "information, data, and compilations not generally known outside Company . . . concerning Company's business and includes information of Company, its affiliates, and its and their customers . . . including but not limited to: information and materials used in marketing or presenting the business of Company, including style, format and content; customer and potential customer lists, contact information, and information pertaining to customer goals and strategies

and customer sales and purchasing histories; prices and terms offered or paid for products and services. . . ." (Non-Competition Agreement, § 5.1).

16.    Furthermore, the Non-Competition Agreement provides several, non-exclusive specific examples of Confidential Information regarding Richard's methods of doing business, including prices and terns offered or paid for products and services (*Id.*).

17.    The Non-Competition Agreement specifically identities Hegarty's obligations regarding the Confidential Information by stating that:

> Employee will hold in strictest confidence and will not use or disclose to any person, firm, or corporation, without the written authorization of an officer of Company, any of Company's Confidential Information, except as such use or disclosure may be required in connection with Employee's work for Company. Employee understands that this Agreement applies to computerized as well as written information. It is expressly understood, however, that the obligations of this paragraph shall only apply for as long as and to the extent that the aforesaid Confidential Information has not become generally known to or available for use by the public other than by Employee's act or omission or a breach by another person of a legal duty or obligation.

(Non-Competition Agreement, § 5.1(a)).

18.    The Non-Competition Agreement also includes provisions that specifically delineate the activities that are prohibited under the terms of the Non-Competition Agreement. Notably, the Non-Competition Agreement contains both a covenant not to solicit Richards' customers and a separate covenant not to compete.

19.    Section 5.4 of the Non-Competition Agreement prohibits Hegarty from engaging in competition with Richards for a period of 18 months after the termination of his employment with Richards, and in particular, from soliciting Richards' customers and clients.  Specifically, Section 5.4 provides:

> Non-Solicitation of Company Customers Covenant.  Employee hereby further covenants and agrees that during the term of employment with Company and for a period of eighteen (18) months after the termination of such employment, for whatever reason, Employee shall not directly or indirectly, entice, solicit, interfere

with, induce or endeavor to entice, solicit, interfere with or induce away from the Company, any person, firm, corporation, limited liability company or other entity that is a customer, supplier, developer, client, member, vendor, licensor, licensee or provider of the Company at the time of such solicitation, or was a customer, supplier, developer, client, member, vendor, licensor, licensee or provider at any time during the one year period prior to the date of such solicitation. Employee acknowledges that the covenants set forth in this Subsection 5.4 are reasonable in scope and essential to the preservation of the Business of the Company (as defined below).

(Non-Solicitation of Company Customers Covenant, § 5.4).

20. Moreover, Section 5.5 of the Non-Competition Agreement prohibits Hegarty for a period of 18 months after the termination of his employment with Richards, from performing services similar to the services Hegarty performed during his employment with Richards. In particular, Section 5.5 provides:

Non-Competition Covenant. Employee agrees that during the term of employment with Company and for a period of eighteen (18) months after the termination of such employment, for whatever reason, Employee will not. without the express written consent of Company, on Employee's own account or for the benefit of any other person or entity, directly or indirectly, perform services similar to those that Employee has performed for Company for a Competing Business within a 30 mile radius of any office or Location of Company where Employee has worked during the last twenty four (24) months of employment with Company. As used in this Agreement, "Competing Business" means any person or entity that sells, solicits, markets or otherwise makes available any product, program, solution or service for any person or entity, which is the same as or similar to or is in competition with, or has a use allied to, or may be substituted for or supplied by, any product, program, solution or service of the Company. Without limiting the foregoing, Employee is restricted from (i) acting in the same or similar capacity that Employee acted with the Company for a Competing Business; (ii) performing the same or similar duties and responsibilities as (s)he performed with the Company for a Competing Business; (iii) sharing Confidential Information with a Competing Business or utilizing Confidential Information for the benefit of a Competing Business; or (iv) soliciting the Company's customers or other protected business relationships for purposes of seeking to induce such customers or relationship to alter or end their relationship with the Company. Employee acknowledges that the covenants set forth in this Subsection 5.5 are reasonable in scope and essential to the preservation of the Business of the Company. Employee also acknowledges that the enforcement of the covenants set forth in this Subsection 5.5 will not preclude Employee from being gainfully employed in such manner and to the extent as to provide a standard of living for Employee, the members of Employee's family and the others

dependent upon Employee of at least the level to which Employee has become accustomed and may expect. . . .

(Non-Competition Agreement, § 5.5).

21.     In the Non-Competition Agreement, Hegarty acknowledged "that competition by him following the termination of Employee's employment would impair the operation of the Company beyond that which would arise from the competition of an unrelated third party with similar skills." (*Id.*).

22.     Through his signature on the Non-Competition Agreement, Hegarty expressly acknowledged and agreed that Richards' business is highly competitive and that a violation of any of the provisions would cause immediate and irreparable harm, loss and damage to the Company that cannot be adequately compensable by a monetary award.  (Non-Competition Agreement, § 5.6). Hegarty's signature on the Non-Competition Agreement also evidences his acknowledgement that "the restrictions contained herein are reasonable in terms of time periods, scope and territorial areas and are the minimum necessary to adequately protect the Business of [Richards], Confidential Information and goodwill of the Company." (Non-Competition Agreement, §§ 5.7, 5.9).

**C.     Hegarty Terminates His Employment With Richards and Starts Competing with Richards and Soliciting Its Customers**

23.     On April 20, 2021, Hegarty's employment with Richards ceased.

24.     Almost immediately after his employment with Richards ended, Hegarty began providing the same installation services for siding, window and door products in the Raleigh, North Carolina area as he did while he was employed with Richards.

25.     After leaving Richards, Hegarty informed one of Richards' long-standing customers, NC Siding & Exteriors LLC, that he had started his own installation company. Accordingly, Hegarty is a direct competitor of Richards.

26.     Since leaving Richards, Hegarty specializes in providing construction-related installation services to developers and construction contractors in the Raleigh area, including the installation services for siding, window and door products. In connection with his new business, Hegarty has daily contact with customers and has similar duties and responsibilities as a Senior Install Sales Manager at Richards. Upon information and belief, Hegarty is using Richards' confidential and proprietary information and resources developed by Richards in connection with his new construction installation business.

27.     Richards sent a letter to Hegarty on May 12, 2021 demanding that Hegarty cease and desist the activity violative of the Non-Competition Agreement.  In the cease and desist letter, Richards informed Hegarty that it possessed information that Hegarty was engaged in competitive conduct in breach of his Non-Competition Agreement, including performing the same construction installation services that he performed while employed at Richards and soliciting Richards' clients. (A true and correct copy of the cease and desist letter is attached as Exhibit B).

28.     The cease and desist letter set forth the relevant provisions of the Non-Competition Agreement.  The cease and desist letter requested that Hegarty comply with the Non-Competition Agreement.  The cease and desist also letter warned Hegarty that Richards would seek all available remedies under the Non-Competition Agreement if Hegarty did not immediately cease the infringing conduct.

29.     As of the date of filing this Petition, Hegarty has not responded to the letter and has not ceased the unlawful activity.

30.     In fact, Richards recently discovered through its long-standing customer, Haven Homes, LLC, that Hegarty is in fact directly competing with Richards' installation business and soliciting its customers. Haven Homes is a Richards' customer that Hegarty had direct contact with and dealt with on a regular basis during his employment at Richards. On June 21, 2021, Haven

Homes notified Richards that it had accepted a bid from Hegarty for certain upcoming siding installation projects in the Raleigh area. Not only is Hegarty engaging in the same building material installation business as Richards, but upon information and belief, he used Richards' proprietary pricing information to secure the project. (*See* the June 21 Email from Tom Petruccelli of Haven Homes to Richards, attached as Exhibit C.)

31.     Hegarty engages in the same construction-related installation business as Richards, by whom Hegarty was employed. In direct competition with Richards, Hegarty is performing, operating, and otherwise engaging in and participating in a Competitive Business operating in or soliciting business from the Raleigh, North Carolina marketplace, as defined in the Non-Competition Agreement.

## COUNT I
### (Hegarty's Breach of the Non-Competition Agreement)

33.     Richards realleges and incorporates paragraphs 1 through 31 of the Complaint, as though fully set forth herein.

34.     Hegarty was aware of the express terms of the Non-Competition Agreement, which prohibited him from performing the same construction installation services that he performed while employed at Richards and soliciting Richards' clients after he left Richards' employ. Furthermore, Hegarty knew that the Non-Competition Agreement prevented him from disseminating Richards' trade secrets and confidential, proprietary client information.

35.     Hegarty's knowledge of the terms of the Non-Competition Agreement is indicated by his signature on the Non-Competition Agreement.

36.     Richards has performed fully its obligations under the Non-Competition Agreement.

37.     Hegarty breached the Non-Competition Agreement by engaging in the business of providing construction-related installation services to developers and construction contractors in the Raleigh area, including providing installation services for siding, window, and door products, as a competing business located within 30-miles of Richards' Raleigh location; and, upon information and belief, using Richards' proprietary information. Hegarty also breached the Non-Competition Agreement by directly soliciting Richards' long-standing customer, Haven Homes.

38.     As a result of Hegarty's aforementioned acts, practices, and conduct, Richards has suffered and will continue to suffer irreparable harm insofar as the client relationships upon which Richards' business is predicated cannot be repaired solely through monetary damages. Unless enjoined from committing further acts that are contrary to Hegarty's obligations under the Non-Competition Agreement, Hegarty will continue to cause Richards immediate and irreparable harm.

39.     Hegarty acknowledged in the Non-Competition Agreement that the restrictive covenants and confidentiality provisions were necessary to reasonably protect Richards and its relationship with its clients. Additionally, Hegarty acknowledged that specific performance of the Non-Competition Agreement, injunctive relief, or equitable relief would be appropriate in the event that he breached the Non-Competition Agreement.

40.     Hegarty's intentional breach of the Non-Competition Agreement has injured Richards' business, thereby causing Richards to suffer damages in an amount that must be determined at trial.

**WHEREFORE,** Plaintiff, Richards Building Services, LLC, respectfully requests that:

A.     For a period of eighteen (18) months, that Defendant Drew Hegarty be enjoined from engaging in activities that violate the provisions of the Non-Competition Agreement, such as performing construction-related installation services to developers and construction contractors in the Raleigh area, including performing installation services for siding, window and door products within a thirty (30) mile radius of Richards Building Services, LLC's Raleigh, North Carolina, location, and

that Defendant Drew Hegarty be enjoined from violating in any manner any other provision of the Non-Competition Agreement;

B.     For a period of eighteen (18) months, that Defendant Drew Hegarty be enjoined from directly and indirectly enticing, soliciting, interfering, or inducing from Richards Building Services, LLC, any person, firm, corporation, limited liability company or other entity that is a customer, client, vendor, or provider of Richards Building Services, LLC at the time of such solicitation, or was a customer, vendor, or provider at any time during the one year period prior to the date of such solicitation;

C.     Defendant Drew Hegarty be enjoined from disclosing any of Richards Building Services, LLC's confidential and proprietary information, including any customer lists and pricing information;

D.     Judgment be entered against Defendant Drew Hegarty for compensatory damages in an amount in excess of $75,000, plus all prejudgment and post-judgment interest to which Plaintiff, Richards Building Services, LLC, is entitled, including any fees received by Defendant Drew Hegarty as a result of his breach of the Non-Competition Agreement; and

E.     This Court grant such other and further relief as it may deem just and equitable.

## COUNT II
### (Breach of Duty of Loyalty)

41.     Richards realleges and incorporates paragraphs 1 through 31 of this Complaint, as though fully set forth herein.

42.     As an employee and fiduciary of Richards, Hegarty owed Richards a duty of loyalty at all relevant times.

43.     Hegarty breached his fiduciary duty of loyalty to Richards by accepting and engaging in a business that directly competes with Richards and by soliciting Richards' customers and clients, only days after his termination from Richards, and, upon information and belief, using Richards' confidential, proprietary and trade secret information in connection with Hegarty's new business, including Richards' proprietary pricing information.

44.     Permitting Hegarty's conduct to continue unabated will cause Richards to be irreparably harmed. Richards will be irreparably harmed through Hegarty's competitive activities

of providing construction-related installation services to developers and construction contractors in the Raleigh area, including providing installation services for siding, window and door products, resulting in the erosion of Richards' goodwill, and the continued loss of customers and prospective customers.

45. As a proximate result of Hegarty's aforementioned breaches of his duty of loyalty, Richards has suffered, and will continue to suffer in the future, actual damages in an amount in excess of $50,000, plus applicable interest.

## **JURY DEMAND**

46. Richards Building Services, LLC demands a trial by jury on all issues triable to a jury.

**WHEREFORE,** Plaintiff, Richards Building Services, LLC, respectfully requests that:

A. For a period of eighteen (18) months, that Defendant Drew Hegarty be enjoined from engaging in activities that violate the provisions of the Non-Competition Agreement, such as performing construction-related installation services to developers and construction contractors in the Raleigh area, including performing installation services for siding, window and door products within a thirty (30) mile radius of Richards Building Services, LLC's Raleigh, North Carolina, location, and that Defendant Drew Hegarty be enjoined from violating in any manner any other provision of the Non-Competition Agreement;

B. For a period of eighteen (18) months, that Defendant Drew Hegarty be enjoined from directly and indirectly enticing, soliciting, interfering, or inducing from Richards Building Services, LLC, any person, firm, corporation, limited liability company or other entity that is a customer, client, vendor, or provider of Richards Building Services, LLC at the time of such solicitation, or was a customer, vendor, or provider at any time during the one year period prior to the date of such solicitation;

C. Defendant Drew Hegarty be enjoined from disclosing any of Richards Building Services, LLC's confidential and proprietary information, including any customer lists and pricing information;

D. Judgment be entered against Hegarty for compensatory damages in an amount in excess of $75,000, plus all prejudgment and post-judgment interest to which Plaintiff is entitled, including any fees received by Defendant, Drew Hegarty as a result of his breach of the Non-Competition Agreement; and

E.     This Court grant such other and further relief as it may deem just and equitable.


Dated:  July 1, 2021                              Respectfully submitted,



                                                  By:  _/s/ Tracy L. Eggleston_____

                                                  Tracy L. Eggleston
                                                  Denise L Bessellieu (seeking admission)
                                                  COZEN O'CONNOR
                                                  301 South College Street, Suite 2100
                                                  One Wells Fargo Center
                                                  Charlotte, NC 28202
                                                  Telephone:  (704) 348-3455
                                                  Facsimile:  (704) 817-0933
                                                  Email:  teggleston@cozen.com
                                                  N.C. State Bar #18471

                                                  Mitchell J. Edlund (seeking admission)
                                                  Corey T. Hickman (seeking admission)
                                                  COZEN O'CONNOR
                                                  123 N. Wacker Drive, Suite 1800
                                                  Chicago, IL 60606
                                                  Telephone:  (312) 474-7900 Facsimile:
                                                  (312) 706-9755

                                                  *Attorneys for Plaintiff,*
                                                  *Richards Building Services, LLC*