IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-281-BO

RICHARDS BUILDING SERVICES, LLC,    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )            O R D E R
                                     )
                                     )
DREW HEGARTY,                        )
                                     )
            Defendant.               )

This cause comes before the Court on plaintiff Richards Building Services, LLC's motion

for preliminary injunction. The Court held a hearing on the matter on July 28, 2021, at 2:00 p.m.

at Raleigh, North Carolina. For reasons discussed below, plaintiff's motion is granted.

BACKGROUND

On July 1, 2021, Plaintiff filed this action, along with its motion for preliminary injunction

and memorandum in support thereof. Plaintiff has also submitted the declarations of Travis Rawls

and Angelo Greco in support of its motion for preliminary injunction. Defendant Drew Hegarty

was served by designated delivery on July 14, 2021, at 10:39 a.m., in accordance with Local Civil

Rule 5.1(e), Rule 4(e) of the Federal Rules of Civil Procedure, and N.C. Gen. Stat. §1A-1, Rule

4(j)(1)(d), with delivery receipt requested. Defendant was served with summons, the complaint,

plaintiff's motion for preliminary injunction, memorandum in support thereof, and the notice of

hearing. On July 21, 2021, Plaintiff filed its affidavit of service. Defendant has not appeared in

this action.

Defendant has not appeared in this case and has not contested plaintiff's factual allegations or legal arguments. Rule 65(a)(1) of the Federal Rules of Civil Procedure prohibits the issuance of a preliminary injunction "without notice to the adverse party." "Although Rule 65(a)(1) does not specify what length of notice is required, the Supreme Court has explained that the defendant must be 'given a fair opportunity to oppose the application and to prepare for such opposition.'" *Hoescht Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 433 n.7 (1974)). Defendant was served on July 14, 2021, and a hearing was held on July 28, 2021. This Court finds that this fourteen-day period constitutes reasonable notice.

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quotation and citation omitted). A movant must make a clear showing of the following four elements before a preliminary injunction may issue: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020). "Each of these four requirements must be satisfied." *Mountain Valley Pipeline, LLC' v. W. Pocahontas Properties Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019).

A. Likelihood of Success on the Merits

To be enforceable, a restrictive covenant must be "(1) in writing; made as part of an employment agreement; (3) based on valuable consideration; (4) reasonable as to both time and territory; and (5) designed to protect a legitimate business interest of the employer." *Lab. Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 458 (M.D.N.C. 2015) (citing *Young v. Mastrom, Inc.*,

2

99 N.C. App. 120 (1990)). A restrictive covenant must be narrowly tailored to protect an employer's legitimate business interests. *See id.* (citation omitted).

The Court first finds that the restrictive covenants were in writing, made as part of an employment agreement, and based on valuable consideration. In plaintiff's motion, memorandum in support, and supporting papers, it is asserted that on December 13, 2019, plaintiff and defendant entered into an employment, non-solicit, and non-compete agreement (the non-compete agreement). Defendant received valuable consideration, or two thousand dollars apart from his wages, for signing the non-compete agreement. Section 5.1 of the non-compete agreement prohibited defendant from disclosing plaintiff's confidential information:

> 5.1    Nondisclosure of Confidential Information. The term "Confidential Information" means information, data, and compilations not generally known outside Company (unless as a result of a breach by Employee or others of any of the obligations imposed by this Agreement or a similar agreement or legal duty) concerning Company's business and includes information of Company, its affiliates, and its and their customers, including but not limited to …
>
> (a)    Employee agrees that all Confidential Information is the property of Company and shall remain so. Except as otherwise herein provided, Employee agrees that during the period of employment, and thereafter, Employee will hold in strictest confidence and will not use or disclose to any person, firm, or corporation, without the written authorization of an officer of Company, any of Company's Confidential Information, except as such use or disclosure may be required in connection with Employee's work for Company. Employee understands that this Agreement applies to computerized as well as written information. …
>
> (b)    Employee agrees that Employee has no proprietary interest in the Company's Confidential Information and that Employee will not take with Employee any Confidential Information that is in written, computerized, machine readable, model, sample, or other form capable of physical delivery, including, but not limited to, client lists and other documents relating to clients, upon or after the termination of employment with Company, without the prior written consent of an officer of Company. Employee also agrees that upon the termination of employment with Company, or at any other time requested by the Company, Employee shall deliver promptly and return to Company all Confidential Information, Company property and such other materials belonging to Company in Employee's possession, custody, or control.

3

(c)     Employee shall take all reasonable steps to safeguard Confidential Information and protect it against disclosure, misuse, loss or theft.

Section 5.4 of the Non-Compete Agreement prohibited defendant from soliciting plaintiff's customers for a period of eighteen months after the cessation of his employment:

5.4     Non-Solicitation of Company Customers Covenant. Employee hereby further covenants and agrees that during the term of employment with Company and for a period of eighteen (18) months after the termination of such employment, for whatever reason, Employee shall not directly or indirectly, entice, solicit, interfere with, induce or endeavor to entice, solicit, interfere with or induce away from the Company, any person, firm, corporation, limited liability company or other entity that is a customer, supplier, developer, client, member, vendor, licensor, licensee or provider of the Company at the time of such solicitation, or was a customer, supplier, developer, client, member, vendor, licensor, licensee or provider at any time during the one year period prior to the date of such solicitation. Employee acknowledges that the covenants set forth in this Subsection 5.4 are reasonable in scope and essential to the preservation of the Business of the Company (as defined above).

Section 5.5 of the Non-Compete Agreement prohibited defendant from competing with plaintiff for a period of eighteen months after the cessation of his employment:

5.5     Non-Competition Covenant. Employee agrees that during the term of employment with Company and for a period of eighteen (18) months after the termination of such employment, for whatever reason, Employee will not without the express written consent of Company, on Employee's own account or for the benefit of any other person or entity, directly or indirectly, perform services similar to those that Employee has performed for Company for a Competing Business within a 30 mile radius of any office or Location of Company where Employee has worked during the last twenty four (24) months of employment with Company. As used in this Agreement, "Competing Business" means any person or entity that sells, solicits, markets or otherwise makes available any product, program, solution or service for any person or entity, which is the same as or similar to or is in competition with, or has a use allied to, or may be substituted for or supplied by, any product, program, solution or service of the Company.  Without limiting the foregoing, Employee is restricted from (i) acting in the same or similar capacity that Employee acted with the Company for a Competing Business; (ii) performing the same or similar duties and responsibilities as (s)he performed with the Company for a Competing Business; (iii) sharing Confidential Information with a Competing Business or utilizing Confidential Information for the benefit of a Competing Business; or (iv) soliciting the Company's customers or other protected business relationships for purposes of seeking to induce such customers or relationship to

4

alter or end Employee's relationship with the Company. Employee acknowledges that the covenants set forth in this <u>Subsection 5.5</u> are reasonable in scope and essential to the preservation of the Business of the Company. Employee also acknowledges that the enforcement of the covenants set forth in this <u>Subsection 5.5</u> will not preclude Employee from being gainfully employed in such manner and to the extent as to provide a standard of living for Employee, the members of Employee's family and the others dependent upon Employee of at least the level to which Employee has become accustomed and may expect. Furthermore, Employee acknowledges that competition by him following the termination of Employee's employment would impair the operation of the Company beyond that which would arise from the competition of an unrelated third party with similar skills. …

The Court further finds that the restrictive covenants were designed to protect plaintiff's legitimate business interests and that the restrictive covenants are reasonable as to time and territory. The two-year timeframe and radius of thirty miles are reasonable based on North Carolina precedent. *Carlson Envtl. Consultants, PC v. Slayton*, 3:17-cv-00149-FDW-DCK, 2017 U.S. Dist. LEXIS 154191, at \*24 (W.D.N.C. Sept. 21, 2017) ("A two-year noncompetition agreement is 'well within the range that the North Carolina courts have deemed reasonable.'") (internal citations omitted); *Philips Elecs. N. Am. Corp. v. Hope*, 631 F. Supp. 2d 705, 717 (M.D.N.C. 2009) ("As a general proposition, a non-competition agreement of two years is 'well within the range that the North Carolina courts have deemed reasonable.'") (internal citations omitted); *Atl. Pinstriping, LLC v. Atl. Pinstriping Triad. LLC*, 3:16-CV-547-GCM, 2016 U.S. Dist. LEXIS 185825, at \*13 (W.D.N.C. Sept. 23, 2016) ("The geographic scope of the covenant—within 25-miles of the former franchised territory or within 25 miles of any business owned or operated by the franchisor or any other Atlantic Pinstriping® franchisee—is well within the range of what North Carolina courts have deemed reasonable in similar circumstances."); *Keith v. Day*, 81 N.C. App. 185, 194–95 (1986) (finding a restrictive covenant applicable to the "greater Raleigh area" reasonable). Furthermore, defendant himself acknowledged that the restrictive covenants were reasonable when he signed the non-competition agreement. North Carolina have held that the business interests at

5

stake here, the protection of confidential information, client relationships, and goodwill, are legitimate interests that support enforcement of restrictive covenants. *XPO Logistics v. Northrop*, 319-cv-00348-FDW-DSC, 2019 U.S. Dist. LEXIS 129569, at *16 (W.D.N.C. Aug. 2, 2019) ("As this Court has previously observed, longstanding precedent from the North Carolina appellate courts holds that confidential information and goodwill are legitimate interests that support enforcement of noncompetition restrictions."); *Carlson Envtl. Consultants*, 2017 U.S. Dist. LEXIS 154191, at *21–22 (collecting cases holding that an employer has a legitimate business interest in "protection of relations and good will," protection of "confidential information and trade secrets," and "protecting its business' goodwill") (internal citations omitted); *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 651 (1988) ("[P]rotection of customer relationships and good will against misappropriation by departing employees is well recognized as a legitimate protectable interest of the employer.").

Plaintiff has also made a showing that defendant has breached the restrictive covenants. Plaintiff alleged that defendant's employment with plaintiff ended on April 20, 2021, and since that time, defendant has violated, and continues to violate, the foregoing restrictive covenants by competing with plaintiff in the construction installation services business within thirty miles of plaintiff's Raleigh, North Carolina location, by soliciting plaintiff's customers and clients, and by disclosing and/or misappropriating plaintiff's confidential information, including but not limited to, customer lists, proprietary pricing information, and business plans.

Therefore, the Court finds that defendant has a strong likelihood of success on the merits.

B. Irreparable Injury

The Court finds that plaintiff will suffer irreparable injury if defendant is allowed to violate the restrictive covenants. If defendant is not enjoined, plaintiff will continue to lose client

6

relationships, lose future business opportunities, and irretrievably lose goodwill associated with clients. Such circumstances have previously served as the basis for irreparable injury warranting a preliminary injunction. *Carlson Envtl. Consultants*, 2017 U.S. Dist. LEXIS 154191, at *30 ("[T]he potential loss of customer relationships, goodwill and impairment of CEC's competitive position support a finding that CEC is likely to suffer irreparable harm without injunctive relief."); *Phillips*, 631 F. Supp. 2d at 711–712 (finding that misappropriation of confidential information would cause irreparable harm by "provid[ing] an unfair competitive advantage" to third parties and that the former employee's violation of the restrictive covenants "could result in the further loss of customer relationships and goodwill."). Finally, irreparable harm may be established where a contract between the parties expressly provides that irreparable harm will result from a breach. *See, e.g., Carlson Envtl. Consultants*, 2017 U.S. Dist. LEXIS 154191, at *30 ("The Court also finds that Slayton recognized in his CEC Agreement that his violation of the noncompetition provisions would cause irreparable harm to CEC."); *XPO Logistics*, 2019 U.S. Dist. LEXIS 129569, at *21 ("Northrop explicitly acknowledged in her Agreement that a violation of her noncompetition and confidentiality obligations could cause harm to XPO and necessitate injunctive relief.") This is the case here, as defendant agreed in his non-competition agreement that a breach of the restrictive covenants would cause immediate and irreparable harm not adequately compensable by a monetary award.

C. Balance of Equities

The Court also finds that the balance of the equities tips in plaintiff's favor. Defendant was sent a cease-and-desist letter reminding him of his obligations under the non-competition agreement, but he ignored the letter and continued to violate his contractual obligations. *See Carlson Envtl. Consultants*, 2017 U.S. Dist. LEXIS 154191, at *31 ("CEC sent Slayton and his

7

employer a cease and desist letter, yet the evidence shows that before and after receipt of that letter, Slayton continued . . . in disregard of the noncompetition provision of his CEC Agreement."). Defendant will suffer no hardship here, as he is merely being held to the obligations he agreed to in his contract and he specifically agreed in his contract that the restrictions would not prevent him from being gainfully employed in such a manner that would enable him to provide for himself and his family. *See Phillips*, 631 F. Supp. 2d at 712 (finding that the former employee would suffer no harm where he agreed in his contract that the restrictions were reasonable and that they would "not prevent him from earning a livelihood or otherwise impose undue hardship on him"); *XPO Logistics*, 2019 U.S. Dist. LEXIS 129569, at *23 ("Northrop specifically acknowledged in the Agreement that, based on her experience and capabilities, compliance with the noncompetition obligation would not prevent her from earning a livelihood to support herself and her dependents.").

D. Public Interest

Finally, the Court finds that the public interest would be served by granting the injunction. The Supreme Court of North Carolina has recognized that it is "a matter of public concern to see that valid [restrictive] covenants are observed." *Kuykendall*, 322 N.C. at 649 ("[B]y enforcing the restrictions a court is only requiring the defendants to do what they agreed to do.") (internal citations omitted); *Carlson Envtl. Consultants*, 2017 U.S. Dist. LEXIS 154191, at *34 (holding that enforcing restrictive covenants is "in the public interest, because it is beneficial to the public for Courts to enforce agreements that private parties enter into knowingly and voluntarily" and because the employer "has a legitimate interest in developing its customer relationships and being able to share confidential information with its employees without fearing that it will end up in the hands of a competitor"); *Lab. Corp.*, 84 F. Supp. 3d at 464 ("[T]he enforcement of valid restrictive

8

covenants is in the public interest."). Thus, since the restrictive covenants at issue here are valid and enforceable, the public will be served by holding defendant to the terms of the bargain he voluntarily and willingly entered into.

Therefore, since plaintiff has met all of the requirements, the Court finds that it is appropriate to enter a preliminary injunction.

CONCLUSION

Plaintiff's motion for preliminary injunction [DE 3] is GRANTED, and defendant Drew Hegarty is:

1.     Preliminarily enjoined and restrained from disclosing, using, or misappropriating plaintiff's confidential information (as defined in the non-compete agreement), including but not limited to, plaintiff's customer lists, business plans, and pricing information;

2.     Preliminarily enjoined and restrained from, indirectly or directly, soliciting, enticing, or inducing away from plaintiff, or accepting business from, any of plaintiff's clients or customers that were clients or customers of plaintiff during the prior one-year period, and which defendant dealt with, did business with, serviced, or communicated with during his employment with plaintiff; and,

3.     Preliminarily enjoined and restrained from, indirectly or directly, performing, selling, or offering for sale, construction installation services (including but not limited to, siding, gutters, windows, and roofing), within a thirty-mile radius of plaintiff's Raleigh location at 2605 Atlantic Avenue, Raleigh, North Carolina 27604.

This Order shall be effective immediately and remain in effect until further order of this Court. Per the terms of the non-compete agreement, no bond or security is required from plaintiff.

Case 5:21-cv-00281-BO   Document 22   Filed 08/02/21   Page 9 of 10

Defendant's failure to abide by the terms of the foregoing preliminary injunction may result in monetary or other sanctions, within the discretion of the Court.

SO ORDERED, this _____ day of August, 2021.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE